Filed 2/22/22  P. v. Lowry CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059282 |
| v. | (Super. Ct. No. 14WF2338) |
| STEVEN MATTHEW LOWRY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed with directions.

Boyce & Schaefer and Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Collette C. Cavalier and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant appeals after being sentenced to a determinate prison term of 6 years 2 months, followed by an indeterminate term of life with the possibility of parole, for attempted murder (Pen. Code, §§ 187, subd. (a), 664, subd. (a)),[1] with a finding of premeditation and deliberation (§ 664, subd. (a)), and attempted carjacking (§§ 215, subd. (a), 664, subd. (a)), both with associated true findings of use of a deadly weapon (§ 12022, subd. (b)(1)) and infliction of great bodily injury (§ 12022.7, subd. (a)). He claims the trial court erred from evidentiary and sentencing standpoints. As for the former, defendant argues the court violated his federal right of confrontation by admitting videotaped testimony of the prosecution's key witness — the victim. Regarding the latter, he contends the court violated section 654 by imposing consecutive term sentences without staying the attempted carjacking sentence. Defendant also asserts the abstract of judgment incorrectly lists his attempted murder sentence as being life without the possibility of parole. We find no error but agree, as does the Attorney General, the abstract of judgment must be corrected to reflect a possibility of parole. Accordingly, we direct the trial court to make such modification and affirm the judgment in all other respects.

FACTS

The incident giving rise to the charges against defendant took place one evening outside a grocery store. Manuel Soquena was about to load his purchases into his truck when the then 17-year-old defendant approached him. Defendant said something which Soquena did not hear and he asked him to repeat it. Soquena understood defendant wanted the keys to his truck. When Soquena did not hand them over, defendant lunged at him and stabbed him with a knife in the abdomen area.

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

Soquena took a few steps backward; defendant demanded the keys and lunged at him again. As Soquena stumbled and ran away trying to get to the entrance of the grocery store, defendant ran after him. He caught up to Soquena and stabbed him again. The force of the blow caused Soquena to land on the hood of a nearby vehicle. Defendant stabbed Soquena in the torso then fled.

Police officers responding to the scene interviewed multiple witnesses. They also located defendant as he emerged from bushes near the grocery store parking lot. A hat matching the description of one worn by defendant at the time of the encounter was found in the bushes. The weapon used was not recovered, but laboratory testing revealed Soquena's DNA on defendant's shorts, wrist, and thumb.

Soquena was taken to the hospital where doctors determined he suffered four stab wounds. A stab wound to his heart was life threatening. He underwent multiple surgeries and was in and out of the hospital for roughly a year and a half. Due to the lasting impact of his injuries, including a condition involving fluid buildup in his heart and lungs, he was unable to return to work and now requires 24-hour care. Soquena can barely speak, gets out of breath very easily, and is confined to a wheelchair most of the time.

Officers spoke to Soquena at the scene, at the hospital right after the incident, and a few months later. He relayed that when defendant initially approached him, he did not understand what defendant said so he asked him to repeat it. Defendant demanded he give him his keys and vehicle. He refused and then defendant stabbed him for the first time. Soquena did not recall whether there was any additional exchange of words. He further conveyed that as he tried to get away toward the grocery store entrance, defendant stabbed him again. Eventually, he collapsed onto a vehicle and defendant fled.

Defendant was charged with attempted murder (§§ 187, subd. (a), 664, subd. (a)) and attempted carjacking (§§ 215, subd. (a), 664, subd. (a)). It was further

3

alleged defendant acted with premeditation and deliberation as to the former, and with respect to both counts that defendant used a deadly weapon (§ 12022, subd. (b)) and inflicted great bodily injury (§ 12022.7, subd. (a)).

Prior to trial, prosecutors became aware Soquena was going to leave the country to live in the Philippines. His 24-hour medical care in Orange County was getting too expensive and living in the Philippines would allow him to afford continuing medical care and treatment.

Due to Soquena's imminent move, prosecutors filed a motion to conduct a conditional examination of him pursuant to sections 1335 through 1345. The trial court granted the motion. Defense counsel cross-examined Soquena during the videotaped examination.

Approximately a year later, at the time of trial, the prosecution moved to have the videotaped conditional examination played to the jury and admitted into evidence. At a hearing outside the presence of the jury, the trial court inquired whether both sides would stipulate to Soquena's unavailability under Evidence Code section 240. Defense counsel expressed concern about the scant evidence with which he had been provided to show Soquena, in fact, moved out of the country. He noted all the prosecution gave him was a flight itinerary and an e-mail in which Soquena's nephew provided Soquena's address in the Philippines. He requested something more to indicate Soquena was actually there; that someone was able to reach him to confirm.

The trial court allowed the prosecution to play the video to the jury subject to a motion to strike once it heard further argument from the parties on the Evidence Code section 240 unavailability issue. Soquena described the sequence of events set forth above, with the following additional details: When defendant initially asked for his keys, Soquena told him he could not because he "was an [Internal Revenue Service] agent and [he] may have documents [in his vehicle] that were sensitive to the federal

4

government"; when defendant chased after him as he ran away, defendant said, "You got to go, chink, you are a fed. You are a witness."

During the subsequent discussion outside the jury's presence, the prosecution presented, and the court admitted, four additional documents: a subpoena issued to Soquena; a photograph of Soquena next to a woman holding a Filipino newspaper; a certificate of residency for Soquena from the Republic of the Philippines; and a certification for Soquena from the same. Defense counsel indicated he reviewed the documents and had no argument to offer. The court found Soquena unavailable. Nothing further was said in the proceedings below regarding Soquena's videotaped examination.

The jury found defendant guilty of both counts charged. It also found true the additional allegations concerning premeditation and deliberation, use of a deadly weapon, and infliction of great bodily injury. Following his sentencing, defendant timely appealed.

DISCUSSION

Defendant raises three separate claims of error. First, he argues the trial court violated his federal constitutional right of confrontation by admitting Soquena's videotaped testimony. Second, he contends the court's imposition of consecutive sentences for the attempted murder and attempted carjacking convictions without a stay of the latter violates section 654, subdivision (a). Third, he claims the abstract of judgment incorrectly lists the attempted murder sentence as being life *without* the possibility of parole. We agree the abstract of judgment must be corrected to reflect the possibility of parole, but we otherwise find no error.

5

*Confrontation Clause and Witness Unavailability*

Defendant asserts the trial court violated his Sixth Amendment right to confrontation under the United States Constitution by admitting Soquena's videotaped examination without a sufficient showing by the prosecution of witness unavailability. The Attorney General contends defendant waived the issue by failing to object below on such grounds. Alternatively, it argues a sufficient showing was made and, even if the trial court erred, the error was nonprejudicial. We conclude defendant forfeited the constitutional issue he raises, and the failure to preserve the issue for appeal does not constitute ineffective assistance of counsel under the circumstances.

"The Sixth Amendment of the United States Constitution grants a criminal defendant the right to confront adverse witnesses." (*People v. Lopez* (2012) 55 Cal.4th 573.) For decades, "the United States Supreme Court construed that right as allowing the admission at trial of an out-of-court statement if it fell within a 'firmly rooted hearsay exception' or had 'particularized guarantees of trustworthiness.' The high court overruled that decision . . . in *Crawford v. Washington* (2004) 541 U.S. 36 [Citation]. There, the court created a general rule that the prosecution may not rely on 'testimonial' out-of-court statements unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination." (*Lopez*, at p. 576.)

Turning first to the issue of waiver, generally a defendant forfeits his right to claim error on appeal under the confrontation clause by failing to object in the trial court. (*People v. Lewis & Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19 ["We reiterate that defendants have forfeited this confrontation clause claim by failing to raise it below"]; *People v. Alvarez* (1996) 14 Cal.4th 155, 186 ["Defendant has not preserved his claim for review. . . . There was neither a 'specific' nor 'timely' objection below predicated on the Sixth Amendment's confrontation clause"].)

6

It is undisputed defendant's counsel made no mention below of the right to confrontation, the Sixth Amendment, or the constitution in connection with Soquena's videotaped testimony. He simply expressed concern about the prosecution's showing under Evidence Code section 240 prior to any witnesses being called, focusing on whether Soquena was, in fact, residing in the Philippines. Further, when the prosecution offered additional evidence on the unavailability issue after the videotaped testimony was conditionally admitted subject to a defense motion to strike, defendant's counsel did not renew his objection, make a motion to strike, or make any other indication of continued concern about the prosecution's showing. Given the specificity of the objection as being based on a state statute and these additional circumstances, we conclude defendant did not preserve his federal confrontation clause argument for review.

Defendant argues we should consider his constitutional argument because it does not involve any different facts or legal standards than those raised by the Evidence Code section 240 issue presented to the trial court. (See *People v. Redd* (2010) 48 Cal.4th 691, 730, fn. 19 [when new constitutional argument "'do[es] not invoke facts or legal standards different from those the trial court itself was asked to apply,'" it is not forfeited].) Not so.

Under Evidence Code section 240, a witness may be deemed unavailable for any one of many reasons. One situation is when the witness is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (*Id*., subd. (a)(5).) Another is when a witness is "[a]bsent from the hearing and the court is unable to compel his or her attendance by its process." (*Id*., subd. (a)(4).) Pursuant to the latter, a court may find a witness unavailable under section 240 without any consideration or showing of "reasonable diligence." (*People v. Herrera* (2010) 49 Cal.4th 613, 622-623 (*Herrera*).)

7

The confrontation clause requires an additional step in every case. "A witness who is absent from a trial is not 'unavailable' in the constitutional sense *unless* the prosecution has made a 'good faith effort' to obtain the witness's presence at the trial." (*Herrera, supra*, 49 Cal.4th at p. 622, italics added.)

Thus, a court faced with a confrontation clause objection necessarily must consider the prosecution's effort, whereas the same court faced with an objection predicated on Evidence Code section 240 may find a witness unavailable based entirely on other criteria listed in the statute even if a "reasonable diligence" argument is made by the objector. It appears the latter occurred in this case. Although defense counsel mentioned due diligence in passing, the trial court found Soquena unavailable simply because he was "a resident of the Philippines residing there and outside the jurisdiction of the [c]ourt to compel his attendance." Given these circumstances, the confrontation clause argument is not merely a constitutional gloss on matters raised and considered below, and we will not consider it for the first time on appeal.[2]

---

[2] Even if the confrontation clause argument had been preserved, it would fail. Admission at trial of a witness's prior testimony which was subject to cross-examination does not violate a defendant's confrontation right if the witness is unavailable at the time of trial. (*Crawford v. Washington, supra*, 541 U.S. at p. 59.) A witness is "unavailable" if the prosecution has made a good faith effort to obtain his or her presence at trial. (*Herrera, supra*, 49 Cal.4th at p. 622.) "'The lengths to which the prosecution must go [in a particular situation] is a question of reasonableness.'" (*Ohio v. Roberts* (1980) 448 U.S. 56, 74, abrogated on other grounds by *Crawford, supra*, 541 U.S. 36.) Here, Soquena was residing in the Philippines, had trouble breathing and speaking, was essentially confined to a wheelchair, and required 24-hour care. Prosecutors, through victim-witness representatives and his nephew, were in communication with him and served him with a subpoena. Though defendant proffers additional steps the prosecution supposedly could have taken to get Soquena to testify live at trial, none of which were mentioned by defense counsel below, the existence of such conceivable steps does not mean the efforts undertaken were inherently unreasonable. (See *Hardy v. Cross*, 565 U.S. 65, 71-72 ["[T]he Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry"]; *People v. Diaz* (2002) 95 Cal.App.4th 695, 706 ["'The law requires only reasonable efforts, not prescient perfection'"].) Under the circumstances, the prosecution's efforts to secure Soquena's presence at trial were reasonable.

Defendant contends his counsel's failure to preserve the issue for appeal constitutes ineffective assistance of counsel. Where, as here, the appellate record does not reveal why counsel failed to act as claimed, a defendant asserting ineffective assistance must show there was "'"no conceivable tactical purpose"'" for [the] act or omission." (*People v. Lewis* (2001) 25 Cal.4th 610, 674-675.) Defendant claims the failure to assert a constitutional objection was "not the product of any calculated tactical decision." We disagree.

Defendant's counsel might have chosen not to object because he viewed playback of Soquena's recorded testimony as more advantageous than potentially not having his testimony at all. Based on opening statements, it appears defense counsel's trial strategy was to place doubt in the jury's mind about any intent to kill. Absent Soquena's testimony, jurors might infer from statements of witnesses of the incident that defendant intended to kill Soquena. Defense counsel may have believed revealing inconsistencies between Soquena's recorded testimony and the statements he made to police following the incident would lead jurors to question whether defendant's intent all along was simply to get Soquena's keys and car.

Separately, as the Attorney General points out, assuming Soquena may have testified at trial, defense counsel may have believed rebutting live testimony of a sympathetic victim would be more difficult than rebutting videotaped testimony transcribed on paper for the jury. (See *People v. Woods* (1968) 265 Cal.App.2d 712, 716 [reasonable to assume defense counsel may have believed "prospects for successfully rebutting a cold transcript would be no less than [the] chances of refuting the victim in person"].)

These examples of conceivable tactical reasons for the lack of a confrontation clause based objection by defense counsel defeat any ineffective assistance of counsel claim. We need not reach the parties' arguments concerning prejudice.

9

*Stay of Sentence on Attempted Carjacking Conviction*

The trial court imposed a 10-month sentence for the attempted carjacking, plus a total of an additional 1 year 4 months based on the associated true findings concerning use of a deadly weapon and infliction of great bodily injury, all to be served consecutive to the attempted murder sentence. Defendant argues the trial court should have stayed the attempted carjacking sentence because the two crimes were part of a course of conduct with a single intent and objective. We find no error.

Section 654, subdivision (a) provides, in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "'"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act . . . depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."'" [Citation.] 'If, on the other hand, "[the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct."'" (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 94.) We review a trial court's determination that two crimes were separate, involving separate objectives, for substantial evidence. (*Ibid.*)

10

Substantial evidence supports the finding of multiple intents in this case. Defendant approached Soquena, demanded the keys to his car and proceeded to stab him when Soquena refused to turn them over. At that point, Soquena ran toward the grocery store for safety. Defendant chased after him, saying, "You got to go, chink, you are a fed. You are a witness." When he caught up with him, he stabbed him in the back multiple times. Soquena fell onto a nearby vehicle and defendant fled. From these facts one could reasonably conclude, as the trial court did, the intent to carjack ceased and the intent to kill arose when defendant pursued Soquena as he ran away from his vehicle. His aim was no longer to steal the vehicle, but instead to get rid of the person who could identify him.

The imposition of consecutive sentences for the attempted murder and the attempted carjacking, without the latter being stayed, was warranted under the circumstances.

*Correction of Abstract of Judgment*

The parties agree the abstract of judgment incorrectly reflects defendant was sentenced to life without the possibility of parole for the attempted murder conviction. It should state instead the sentence was life with the possibility of parole. We agree the correction must be made. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 188.)

## DISPOSITION

The trial court is directed to modify the abstract of judgment to reflect an indeterminate term sentence of life with the possibility of parole on count 1 (attempted murder) and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


MARKS, J.*

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.