Filed 8/26/16  P. v. Jacobsen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL NEIL JACOBSEN,<br><br>    Defendant and Appellant. | F069327<br><br>(Super. Ct. No. F13911125)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a jury trial, Michael Neil Jacobsen was convicted of possession of ammunition by a prohibited person and sentenced to two years, eight months in state prison.  On appeal, Jacobsen argues insufficient evidence supports his conviction and that the trial court erred when it gave no unanimity instruction.  He also raises a challenge to

an order we find to be nonappealable. We dismiss Jacobsen's appeal from the nonappealable order and otherwise affirm the judgment of conviction.

## STATEMENT OF FACTS

In November of 2013, Jacobsen was living in a house at 5180 East Ball Avenue in Fresno. Due to a prior conviction for violation of Penal Code[1] section 273.5, he was prohibited from possessing a firearm or ammunition.

Law enforcement suspected Jacobsen of starting a November 18 trash can fire in the driveway of the Ball Avenue house and obtained a search warrant for the premises. The house was searched on November 20. Jacobsen was not home at the time, but was found within minutes at a nearby school yard. Only one bedroom in the house was occupied. That room contained Jacobsen's personal belongings, including mail, photographs and documents with his name on them. In the bedroom closet, officers found a camera case containing four live .20-gauge shotgun shells. In the bedroom, along the same wall as the closet, officers found a box with 34 live .38-caliber rounds, four live .22-caliber rounds, and one live shotgun slug. All of the ammunition was capable of being fired.

Jacobsen, who represented himself at trial, testified in his own defense that he had never seen the bullets before trial and he did not know how they got inside the house. According to Jacobsen, he had recently been released from jail before moving into the house and did not have time to search the house for any contraband. He did, however, admit he found a shotgun shell in the house after his release. Jacobsen testified that, while he was in jail, many people came and went in the house and he believed someone left the bullets in the house in order to frame him and get him kicked out of the house.

---

[1] All further statutory references are to the Penal Code unless noted otherwise.

**DISCUSSION**

## I. SUFFICIENCY OF THE EVIDENCE OF UNLAWFUL POSSESSION

Jacobsen contends the evidence was insufficient to prove he had knowledge of the ammunition found in his house to support his conviction for unlawful possession of ammunition. We disagree.

*Standard of Review*

> "In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] '[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

*Applicable Law and Analysis*

For a defendant to be guilty of unlawfully possessing ammunition under section 30305, he must have: (1) had under his custody or control, owned or possessed ammunition; (2) known that he owned or possessed the ammunition; and (3) been prohibited from possessing ammunition. (CALCRIM No. 2591; § 30305, subd. (a).) To be convicted, the jury had to find that Jacobsen had knowledge of the presence of the ammunition. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030.) The offense can be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746.)

Here, Jacobsen lived in the only one bedroom occupied at the time of the offense, which contained many of Jacobsen's personal belongings. It was in this bedroom that officers found both containers of live ammunition: one container in the closet, the other nearby against the bedroom wall. Jacobsen admitted in his testimony that he had previously found ammunition in the house and had told his mother so. From this evidence, there is sufficient evidence for the jury to infer that Jacobsen knew of the presence of the ammunition.

Jacobsen disagrees, claiming the evidence is insufficient to show his knowledge of the ammunition because "the comings and goings at the house" showed he did not have exclusive control of the house where the ammunition was located. However, "[e]xclusive possession is not necessary. A defendant does not avoid conviction if his right to exercise dominion and control over the place where the contraband was located is shared with others. [Citations.]" (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622.) "[P]ossession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another. [Citation.]" (*People v. Williams* (1971) 5 Cal.3d 211, 215.) Exercise of dominion and control must be something more than mere presence at the scene where contraband is located and more than the opportunity to access a location where contraband is found. (*People v. Redrick* (1961) 55 Cal.2d 282, 285 [citing cases]; *People v. Glass* (1975) 44 Cal.App.3d 772, 777.) The jury heard and rejected Jacobsen's theory that someone else placed the ammunition in the house to frame him. Our role is not to reweigh the jury's evaluation of the evidence. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

Jacobsen also asserts no firearms were found in the house, which "greatly weakens the inference that [he] knowingly possessed the live, but as a practical matter, useless ammunition." But Jacobsen concedes that owning a firearm is not an element of unlawfully possessing ammunition under section 30305.

The evidence set forth above amply supports Jacobsen's conviction of unlawful possession of ammunition. In arguing that the evidence was insufficient, Jacobsen asks this court to reweigh the evidence and view it in the light most favorable to the defense, contrary to the governing standard of review.

## II. FAILURE TO GIVE UNANIMITY INSTRUCTION

Jacobsen argues the trial court committed reversible error when it failed to deliver a unanimity instruction to the jury. We find no prejudicial error.

*Standard of Review*

"[A]ssertions of instructional error are reviewed de novo." (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838.) Whether or not the trial court should have given a "particular instruction in any particular case entails the resolution of a mixed question of law and fact," which is "predominantly legal." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) As such, it should be examined without deference. (*Ibid.*)

*Applicable Law and Analysis*

In California, a jury verdict must be unanimous. (*People v. Collins* (1976) 17 Cal.3d 687, 693.) Thus, our Constitution requires that each individual juror be convinced, beyond a reasonable doubt, that the defendant committed the specific offense he is charged with. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Therefore, when the evidence suggests more than one discrete crime, either: (1) the prosecution must elect among the crimes; or (2) the trial court must instruct the jury that it must unanimously agree that the defendant committed the same criminal act. (*Ibid.*; *People v. Brown* (1996) 42 Cal.App.4th 1493, 1499-1500.) When so dictated, the unanimity instruction must be given sua sponte. (*People v. Riel* (2000) 22 Cal.4th 1153, 1199.) However, "where the acts were substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place, the instruction is not necessary to the jury's understanding of the case." (*People v. Crawford* (1982) 131 Cal.App.3d 591, 599 (*Crawford*).)

Jacobsen's reliance on *People v. Hernandez* (2013) 217 Cal.App.4th 559, is misplaced. In *Hernandez,* the Court of Appeal reversed a conviction because the trial court failed to give a unanimity instruction. The prosecutor failed to make an election between two plausible instances in which the defendant could have been in possession of a firearm or ammunition: one in which he allegedly fired at his ex-girlfriend's house, and one in which he later drove a car with a loaded firearm concealed beneath the hood. No evidence was presented to establish that the guns in the two instances were the same gun. (*Id.* at pp. 569-573.)

Jacobsen's reliance on *Crawford* in which the trial court reversed for failure to give a unanimity instruction, is also misplaced. In *Crawford*, officers found the defendant and his girlfriend together in his bedroom. They seized a loaded .357 magnum revolver holstered at the foot of the bed and a .22 luger semiautomatic from the bedroom closet. They also found a .38-caliber derringer and a .357 magnum in an upstairs bedroom occupied by another individual. (*Crawford, supra,* 131 Cal.App.3d at pp. 594-595.) The *Crawford* court held that, while "possession of all guns was not fragmented as to time, the possession was fragmented as to space. Guns were in different parts of the house; the evidence showed unique facts surrounding the possessory aspect of each weapon." (*Id.* at p. 598.)

But here there was no error on the part of the trial court in failing to give a unanimity instruction. The mere fact that the ammunition was housed in two different containers, one in the bedroom and one in the bedroom closet, does not compel such an instruction. The two containers were not "'fragmented as to time or space,'" but were found in the bedroom and closet, along the same wall, at the same time. (*Crawford, supra,* 131 Cal.App.3d at p. 599.) Thus, Jacobsen's act of possessing the camera case of ammunition and his act of possessing the box of ammunition were "substantially identical in nature, so that any juror believing one act took place would inexorably believe all acts took place." (*Ibid.*)

6.

Even assuming for the sake of argument that the trial court should have given the unanimity instruction, its omission was harmless, even under the *Chapman*[2] standard of beyond a reasonable doubt. (*People v. Hernandez, supra,* 217 Cal.App.4th at pp. 576-579 [noting split of authority as to whether *Chapman* or *Watson*[3] standard applies to erroneous omission of unanimity instruction].)

Under *Chapman*, where the record, as here, provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that the defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless. (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853 [error harmless where defendant presented unitary defense that all six guns belong to his mother]. Jacobsen offered the same defense to all criminal acts and the jury's verdict implies that it did not believe the only defense offered. As such, the failure to give a unanimity instruction is harmless error. (*People v. Diedrich* (1982) 31 Cal.3d 263, 283.) Furthermore, the error is also harmless where the record, as here, indicates the jury resolved the basic credibility dispute against Jacobsen and would have convicted him of any of the various offenses shown by the evidence. (*People v. Thompson, supra,* 36 Cal.App.4th at p. 853.)

### III. PRELIMINARY HEARING TRANSCRIPTS FOR PRIOR CASE

Jacobsen's final argument is that the trial court exceeded its power in reconsidering a prior judge's order granting him a copy of transcripts from his prior conviction so that he could collaterally attack it in a habeas proceeding. We disagree.

*Procedural Background*

In a pretrial hearing January 6, 2014, before Judge Brian Alvarez, Jacobsen made an oral motion "requesting to produce transcripts," which was granted. The minute order

---

**2**    *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

**3**    *People v. Watson* (1956) 46 Cal.2d 818.

7.

states the court then ordered a copy of transcripts from February 24, 2013 and December 26, 2013.  At a subsequent hearing January 23, 2014, on several motions before Judge Gerald Sevier, Jacobsen complained that Judge Alvarez granted his motion to produce transcripts, but he had not received the requested transcript of his "2001 preliminary hearing," which led to his 2003 prior strike conviction.  Jacobsen noted that he was also granted a copy of transcripts from December 24**4** and 26, and while he had received the transcripts from December 24, he still had not received the transcript from December 26 or "my 2001 prelim, which is the alleged strike offense."  Jacobsen stated Judge Alvarez ordered the clerk to look up whether the 2001 transcripts were still available and that he had them "pulled up," but Jacobsen had not yet received a copy.  Judge Sevier stated he would mention it to the clerk of the court and "whatever appropriate followup there is to do, I'm sure it will be done."

On February 11, 2014, in a pretrial motion before Judge John Vogt, Jacobsen again complained that he had not received the December 26, 2013, or 2001 transcripts. Judge Vogt stated that he could "see where the court ordered the 24th and the 26th."   As to the issue of the 2001 preliminary hearing transcripts, Jacobsen explained that he had had the transcripts many years ago "during the appeal process," but had lost them. Jacobsen stated he had recently contacted his ex-wife, the victim of the 2003 "alleged strike conviction," and found there were "false statements made during the preliminary hearing."  Jacobsen stated he wished to have the transcripts so he could file "a habeas corpus or a writ of prohibition or something, extraordinary writ to try and overturn that conviction on the grounds that there was … new evidence .…"  Judge Vogt responded:

> "I'm not going to hear anything about whether that prior conviction is proper or not or whether there's some grounds for a habeas corpus relief .… You have to pursue that through that other type of remedy.  It's not going to

---

**4**     It appears that the minute order was incorrect and that the February 24, 2013, reference should have been to December 24, 2013.

be relitigated here. That's not my job. I don't have the authority to do that, okay. So, look, I understand that ten years later, eleven years later you may have issues about that prior conviction. But as we sit here in Department 60 now, I can't hear that."

After all of Judge Vogt's comments, Jacobsen responded:

"I know the trial's going to go without the transcripts and if I'm convicted I will be sentenced under the guidelines of having a strike conviction.… [¶] … [¶] … But if all of that does go through I would still like to be able to have the transcripts so I can attack it during my appeal as well as during the habeas corpus .…"

Judge Vogt verified with Jacobsen that after the 2001 preliminary hearing, Jacobsen entered a plea, he was granted probation, and he later violated that grant of probation and filed an appeal on that. Judge Vogt then stated:

"[W]hat I'm hearing … is that … as far as the record of this prior conviction is concerned it is a final decision. I don't have the authority to revisit it. So as far as we're concerned for this trial that strike is alleged assuming the People can in fact prove that you suffered that conviction on or about January 7th, 2003, then I can't … dispute what it is you were convicted of - [¶] … [¶] … or why."

Jacobsen stated he understood but, assuming he was convicted of the current offense, he "would still like to be able to have the transcripts so I can attack it during my appeal as well as during the habeas course while I'm in custody .…"

Judge Vogt then questioned the prosecutor and asked whether he would need the 2001 preliminary hearing transcript in order to prove Jacobsen suffered a prior strike in the current proceeding. The prosecutor stated he would not, and that the 2001 transcripts would be irrelevant and inadmissible. Judge Vogt agreed, concluding:

"If Judge Alvarez made an order to get you that transcript so you could pursue some type of collateral attack on that conviction, I don't think that is the Fresno County Superior Court's job now, so I'm not going to delay what we're doing in order to do that. If Judge Alvarez made that order, then you can take steps to enforce that order, but it's not going to be part of this trial proceeding."

Judge Vogt then stated that he would not delay the current trial in order to provide Jacobsen with the transcripts, but that he would request the entire file from Jacobsen's 2003 conviction be brought from the archives so that both Jacobsen and the prosecutor could review it, if needed, in order to prove whether the prior conviction was a strike or not.

At the February 25, 2014, bifurcated bench trial on the prior conviction, numerous documents from Jacobsen's prior conviction were admitted into evidence: his 969B packet, change of plea form, charging document, and minute order from several dates relevant to the conviction. Jacobsen was told several times during the bench trial that the only issue before the court was whether Jacobsen had suffered a prior strike conviction, not the validity of the conviction itself.

At the conclusion of the bench trial on the prior, Jacobsen once again brought up the 2001 preliminary hearing transcript, stating he had an order for the transcript, but had not received it yet and needed it to "prepare some type of post-conviction remedy of habeas corpus .…"

Judge Vogt denied the request, stating:

> "I did, in fact, address that in pretrial motions. I, for all intents and purposes, rescinded, recalled the order the Judge Alvarez evidently made stating that he would grant that request. The Court has no jurisdiction to do that. And I'll tell you, there are a number of orders in the file that I have just referred to, denying your request for further transcripts because all the appellate remedies have been exhausted, and I'm not going to order any further transcripts for review of this case ending 446-3, just in keeping with other orders that have already been made."

*Applicable Law and Analysis*

Jacobsen contends Judge Vogt exceeded his power in reconsidering Judge Alvarez's order that he be provided a copy of his 2001 preliminary hearing transcript. The general rule is that the power of one superior court judge to vacate an order made by another superior court judge is limited because it places the second judge in the role of a

10.

one-judge appellate court.  (*In re Alberto* (2002) 102 Cal.App.4th 421, 427-428.)  But here, we reject and dismiss Jacobsen's argument as nonappealable, as explained below.

Jacobsen is appealing an order denying his request for a 2001 preliminary hearing transcript, which led to the alleged prior strike conviction.  In essence, he requested the record to assist in preparing an anticipated petition for habeas corpus in the event he was punished in his current conviction with a strike he contends does not exist, due to alleged new information he received.

We find Jacobsen seeks to appeal from a nonappealable order.  The right to appeal is statutory and "'a judgment or order is not appealable unless expressly made so by statute.'"  (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.)

As stated in section 1237:

"An appeal may be taken by the defendant from both of the following:

"(a) … [F]rom a final judgment of conviction.  A sentence, an order granting probation, or the commitment of a defendant for insanity, the indeterminate commitment of a defendant as a mentally disordered sex offender, or the commitment of a defendant for controlled substance addiction shall be deemed to be a final judgment within the meaning of this section.  Upon appeal from a final judgment the court may review any order denying a motion for a new trial.

"(b) From any order made after judgment, affecting the substantial rights of the party."

Jacobsen has failed to explain how the order is appealable under section 1237.  The order does not fall into one of subdivision (a)'s categories, as the denial of a request for transcripts is not a final judgment, a sentence, a commitment, or any of the other enumerated orders.  (§ 1237, subd. (a).)  Nor has he presented authority to support his contention that the denial of the order affected his substantial rights under subdivision (b).  (§ 1237, subd. (b).)

Jacobsen could file, and still may file, a petition for habeas corpus due to his current confinement.  (§ 1473; *People v. Villa* (2009) 45 Cal.4th 1063, 1074 [when

11.

offender's present sentence is lengthened as a result of a prior conviction, the offender's custody is directly attributable to the prior conviction].)  If he does so, he would be entitled to transcripts upon a proper showing of their need.  (*People v. Gonzalez* (1970) 7 Cal.App.3d 163, 166.)  But since he had no right to the relief sought here, no substantial right of his was affected by the denial of the motion in question.

For the reasons stated above, we dismiss Jacobsen's challenge to the order denying his request for a copy of the 2001 preliminary hearing transcript.  (*In re Mario C.* (2004) 124 Cal.App.4th 1303, 1307 ["a reviewing court is 'without jurisdiction to consider an appeal from a nonappealable order, and has the duty to dismiss such an appeal upon its own motion'"]; *People v. Benavides* (2002) 99 Cal.App.4th 100, 103 ["We dismiss the appeal as taken from a nonappealable order."])

### DISPOSITION

Jacobsen's challenge to the trial court order denying him a copy of his 2001 preliminary hearing transcript is dismissed, and the judgment of conviction is otherwise affirmed.

_____
FRANSON, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.